1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JENNY L. FOLEY, Ph.D., ESQ.**
Nevada Bar No. 9017
E-mail: jfoley@hkm.com
**DANA SNIEGOCKI, ESQ.**
Nevada Bar No. 11715
E-mail: dsniegocki@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 805-8340
E-mail: jfoley@hkm.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JESSIE GRAY, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>GRAYHAWK LEASING, LLC DBA PEPSI BEVERAGES COMPANY, a foreign limited-liability company,<br><br>Defendant. | CASE NO.:<br><br><br>**COMPLAINT AND JURY DEMAND** |

The Plaintiff Jessie Gray ("**Mr. Gray**" or "**Plaintiff**") by and through his attorneys, Jenny L. Foley, Ph.D., Esq. and Dana Sniegocki, Esq. of HKM Employment Attorneys LLP, hereby complain and allege as follows:

### JURISDICTION

1.    This is an action for damages brought by Plaintiff for unlawful workplace discrimination and retaliation based on race under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq., and Nevada Revised Statute §613.330 et seq; for age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 to 29 U.S.C. § 634; for monetary damages to redress the deprivation of rights

1   secured to the Plaintiff by the Civil Rights Act of 1871, 42 U.S.C. § 1981; and for certain claims

2   brought pursuant to the Nevada Revised Statutes as outlined below.

3          2.      This Court has primary jurisdiction over claims set forth herein pursuant to 28

4   U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a) (4) (civil rights action) and 42 U.S.C.

5   §2000e-5(f)(3) (unlawful discrimination and retaliation in employment). Additionally, this

6   Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C.

7   § 1367.

8          3.      All material allegations contained in this Complaint are believed to have

9   occurred in Clark County, Nevada. Therefore, venue properly lies in the southern division of

10  the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

11                        **EXHAUSTION OF ADMINISTRATIVE REMEDY**

12         4.      On or about October 9, 2016, Plaintiff initiated the process of filing a Charge of

13  Discrimination against his employer, the Defendant named in this action with the Nevada Equal

14  Rights Commission wherein he alleged discrimination based on race, age, sex, and retaliation.

15         5.      On or about September 9, 2020, Plaintiff received his Notice of Right to Sue

16  from the EEOC.

17         6.      This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

18         7.      Plaintiff has exhausted his administrative remedy on all claims pled hereunder

19  prior to filing this action with this Court.

20                              **GENERAL ALLEGATIONS**

21         8.      Plaintiff incorporates all of the allegations in the preceding paragraphs as though

22  fully set forth herein.

23         9.      Plaintiff is a United States citizen and current resident of Clark County, Nevada.

24         10.     Defendant GRAYHAWK LEASING, LLC DBA PEPSI BEVERAGES

25  COMPANY (hereinafter "**Company**" or "**Defendant**") is a foreign limited-liability company

26  and an employer in the State of Nevada.

27         11.     At all times relevant to this matter, Defendant had over 50 employees, and is

28  therefore subject to the provisions of Title VII.

12. Plaintiff is an African American male.

13. Plaintiff was over the age of 50 at the time of the incidents that gave rise to this action.

14. Plaintiff began his employment with Defendant in the summer of 2014 as a Warehouse/Utility Technician.

15. His duties included preparing Pepsi fountain machine by washing, flushing, and sending the machines down the line.

16. Plaintiff would also work on vending machines, but his primary focus was on the fountain machines.

17. Plaintiff was qualified for the Utility Tech position and performed his duties satisfactorily.

18. Within six months of his employment, Plaintiff was not only performing all of his Utility Tech duties, but was also performing several Tech I job responsibilities, such as diagnosing machine.

19. However, while performing these additional responsibilities, Plaintiff started to be sexually harassed by another coworker.

20. Upon information and belief, from approximately April 2016 through October 2016, Plaintiff was being sexually harassed by Plant Manager Lyra LNU.

21. Lyra LNU would frequently approach Plaintiff at work and initiate physical contact with him by rubbing his hands or grabbing his body is various places.

22. Plaintiff reported the sexual harassment to Lead Tech Ryan Marstellaer, a white male in his twenties.

23. Mr. Marstellaer responded with "[Lyra's] not touching you, you're crazy."

24. Plaintiff responded by stating that he felt as if his complaint was not being taken seriously and that he would escalate the complaint to Facility Manager Brandon Clark, who is white male in his thirties.

25. Mr. Marstellaer replied, "go ahead, he's not going to do anything," and unfortunately, he was correct as Mr. Clark also did nothing to address the harassment.

26.     Upon information and belief, Mr. Marstellaer was having an affair with Lyra LNU during this time, and it was a well-known fact among employees.

27.     Plaintiff also brought his complaint of sexual harassment to Plant Manager Julio Padilla, Oriol Sanchez, a Human Resources Representative, and the Company's corporate headquarters, but no one ever addressed the sexual harassment.

28.     Despite the ongoing sexual harassment, Plaintiff was performing all of his duties, which included performing tasks that were reserved for Tech I and Tech II employees.

29.     During this time several Tech I employees even thought that Plaintiff was already Tech I because he was doing the same work.

30.     Plaintiff was also doing certain Tech II tasks, like calibrating and troubleshooting broken machines.

31.     Upon information and belief, Defendant had promised Plaintiff a promotion to Tech I because he was already performing those job functions.

32.     Upon information and belief, Utility Techs make $17.98 per hour, whereas Tech 1 employees make $21.00 per hour.

33.     Several employees praised Plaintiff for his abilities and would often go to him for assistance and training for Utility Tech, Tech I, and Tech II tasks.

34.     When those employees learned that Plaintiff was not Tech 1, they inquired with management as to why since he was doing all the same work but still only a Utility Tech.

35.     Specifically, Jerry Varnadoe Jr. ("Mr. Varnadoe"), a Tech 1 employee, asked Brandon Clark, a Tech Supervisor, why Plaintiff was not Tech 1.

36.     Mr. Varnadoe and Mr. Clark are both Caucasian males.

37.     Mr. Varnadoe specifically inquired not only because Plaintiff had been working for a while before Mr. Varnadoe even started, but also because Plaintiff was the one who trained him on several aspects of the Tech 1 position.

38.     Upon information and belief, Mr. Clark told Mr. Varnadoe that Plaintiff would not be promoted because Plaintiff was too old, and because Plaintiff was Black.

39.     Mr. Varnadoe estimated that during this time, 90% of Mr. Clark's team was

1    white.

2        40.     Because Plaintiff had already been promised a promotion to Tech I based on his

3    work performance, Plaintiff applied for the promotion on or around August 5, 2016.

4        41.     Even though Defendant offered Plaintiff an interview, it became clear that they

5    had no desire to promote him because of his race and for filing his complaint of sexual

6    harassment.

7        42.     Before the interview, Mr. Clark approached Plaintiff on the floor and requested

8    that Plaintiff do a time test to see if he would be a good fit for the position.

9        43.     Upon information and belief, Plaintiff has never seen or heard of any other

10   applicant for this position being required to do a timed test, and is unaware of any other

11   applicant not of his protected classes being required to perform a timed test in order to interview

12   for a promotion

13       44.     Plaintiff asked whether this time test was given to everyone who applies for the

14   position.

15       45.     Mr. Clark ignored the question and stated that Plaintiff needed to demonstrate

16   that he could do the job.

17       46.     Plaintiff complied and did the time test.

18       47.     Upon information and belief, Mr. Clark did not say anything to Plaintiff

19   regarding the test or his results and just left.

20       48.     Upon information and belief, about 30 minutes later, Mr. Clark returned to the

21   floor and presented Plaintiff with a disciplinary write-up, which stated that Plaintiff missed

22   certain tasks and that he performed too slowly.

23       49.     Mr. Clark told Plaintiff that he had to sign the written discipline, and Plaintiff

24   declined to do so because he felt that it was unfair.

25       50.     Plaintiff was then called into the management office where Manager Jeannie

26   Cobb told Plaintiff that he needed to sign the disciplinary write-up because his supervisor

27   allegedly witnessed him being unable to complete certain tasks.

28       51.     On that same day, Mr. Clark and Ms. Cobb conducted Plaintiff's interview.

52.     During the interview, Mr. Clark and Ms. Cobb told Plaintiff that he was not going to get the position because of Mr. Clark's finding on the test, namely that Plaintiff needed more training and was too slow.

53.     The position instead went to a white male who had less experience than Plaintiff.

54.     In fact, when this individual had started, Plaintiff was the one who trained him how to flush, disassemble, and prepare the machines to be sent down the line as well as how to diagnose and document issues.

55.     A few days later, another Tech 1 position opened, and Plaintiff promptly applied.

56.     Plaintiff was not even offered an interview for this new opening.

57.     Upon information and belief, Plaintiff only learned that he was not selected for an interview after a public notice went up on a bulletin board a week later.

58.     The position was filled by a Hispanic male, who had less experience than Plaintiff and who was also trained by Plaintiff when he was first hired.

59.     Upon information and belief, there is no way this individual could have gotten the position without Mr. Clark signing off on it because he was the head Tech on the line.

60.     Plaintiff reported to Human Resources that Defendant was denying Plaintiff the promotion on the basis of his race and age because employees who were not old and black, with less experience, were being promoted over him.

61.     Nothing was done about Plaintiff's complaints and not only did the discrimination continue, but Defendant began actively retaliating against Plaintiff.

62.     Such retaliation included, but was not limited to, Plaintiff being constantly followed around by management employees, such as Ms. Cobb, Mr. Marstellaer, and Mr. Clark, among others, and being written up for any minor infraction.

63.     No other employees who were not of Plaintiff's protected classes were being followed around or written up for minor infractions.

64.     Management also instructed other employees to follow Plaintiff around and document any infractions Plaintiff might have committed so that management could write him up for it.

65.     On September 4, 2016, Plaintiff reported the discriminatory conduct as well as the increasingly retaliatory acts committed by Defendant.

66.     Plaintiff described how he was being forced by Mr. Clark to perform excessive tests and tasks on machines and would then be interrogated about the tasks, only for Mr. Clark to give Plaintiff a written reprimand.

67.     Upon information and belief, Plaintiff was the only person being subjected to this.

68.     Plaintiff also reported that he caught Wayne Weber, a Tech II, removing the RFID tags from bags where Plaintiff had already placed the tags, which made it appear as if Plaintiff had not included the tags in the first place.

69.     Upon information and belief, Mr. Weber reported to Mr. Marstellaer that Plaintiff was losing and misplacing RFID tags. Plaintiff thereafter received a written reprimand.

70.     When Mr. Marstellaer approached Plaintiff with the written reprimand and told Plaintiff to sign it, Plaintiff explained that he could not sign it because he disagreed that he engaged in the wrongdoing.

71.     Upon information and belief, Mr. Marstellaer started yelling and cursing at Plaintiff, exclaiming that Plaintiff needed to "sign the fucking paper."

72.     On September 5, 2016, Plaintiff reported to Human Resources that Defendant, specifically Mr. Marstellaer and Mr. Clark, would unlock Plaintiff's desk and either rummage through Plaintiff's belongings themselves or they would let other employees do the same.

73.     Even if for work purposes, this invasion of privacy resulted in missing or misplaced paperwork, which Plaintiff was then blamed for.

74.     Upon information and belief, Mr. Marstellaer and Mr. Clark scolded and belittled Plaintiff in front of everyone over missing paperwork that was not his fault.

75.     This was then used as further justification for employees to keep an eye on Plaintiff and report his behavior.

76.     Upon information and belief, other coworkers were instructed to follow Plaintiff around and track when he takes his breaks and when he was supposed to return from them.

77.     One such example was on September 15, 2016, where Plaintiff was written up by Ms. Cobb after returning from break a few minutes late.

78.     Upon information and belief, other coworkers were either instructed not to speak with Plaintiff, including Valla Aitia and Nikki [last name unknown] who would not speak to Plaintiff, further isolating him.

79.     Facility Maintenance Manager Sean [last name unknown], also a white male, would order Plaintiff to perform tasks not part of his job or responsibilities, like mopping floors, scrubbing rollers, and walking the grounds in adverse weather.

80.     Mr. Padilla ordered Plaintiff to not wear white, despite such a restriction being nowhere in the Company's policies.  To Plaintiff's knowledge, no other employee not of Plaintiff's protected classes was given such an attire restriction.

81.     Ms. Cobb, Mr. Marstellaer and Mr. Clark would harass Plaintiff by initiating investigations against Plaintiff for various unjustified reasons, like starting rumors.

82.     No one else was forced to perform work outside of their responsibilities, nor did anyone else have fabricated investigations brought against them.

83.     Upon information and belief, Defendant would post job openings for positions Plaintiff had expressed interest in while Plaintiff was on leave and take them down when Plaintiff returned.

84.     Plaintiff expressed that he was being harassed to such a degree that it was making it impossible for him to complete his job.

85.     On October 14, 2016, Manager Monday Serrano, and Mr. Marstellaer began yelling, cursing, and belittling Plaintiff after he made a minor error.

86.     Furthermore, Plaintiff was denied vacation time with no explanation.

87.     Upon information and belief, two other coworkers had similar vacation time approved, both of whom had less seniority than Plaintiff.

88.     On October 16, 2016, Plaintiff reported these acts as well as several other retaliatory acts to Human Resources, stating that the harassment was so extreme that he could not perform his job.

89.     Plaintiff explained that Defendant's harassment was so prevalent that other employees would constantly ask him why management was harassing him.

90.     Plaintiff also reiterated how management would put him through tests that no one else was asked to do.

91.     Upon information and belief, Defendant was also threatening Plaintiff with more frivolous written reprimands if he did not submit a statement regarding another coworker's sexual orientation.

92.     Plaintiff was suffering emotionally from the constant harassment.

93.     Plaintiff visited his physician who told him that he needed to take medical leave due to his mental state.

94.     Plaintiff then went on medical leave for approximately two weeks, which was approved as short-term disability from October 13 through October 31, 2016.

95.     Tragically, while Plaintiff was on his short-term disability leave, his wife passed away.

96.     Plaintiff returned to work after his disability leave but the hostile environment had not improved.

97.     On December 1, 2016, Plaintiff had to leave work early and could not finish his shift because on the ongoing harassment.

98.     Facility Manager Sean [last name unknown] had been following Plaintiff around nonstop for at least two days, making it impossible for Plaintiff to perform his responsibilities.

99.     Plaintiff reported this to Ms. Cobb while it was happening, but she brushed it off and stated that Sean has not had any issues with anyone else, implying that the issue was with Plaintiff.

100.     However, Plaintiff is not only aware that Sean had issues with other employees and temporary workers, but also is aware that management knew of these issues.

101.     Plaintiff also asked Ms. Cobb about his status as an employee, namely what his point status was since he was constantly losing points from all the fabricated reprimands.

102.     Upon information and belief, Ms. Cobb refused to tell Plaintiff the total, stating

1   that it was not a priority.

2   103.   Ms. Cobb claimed that she did not know, despite being in front of her computer

3   and deducting points from Plaintiff just one day prior.

4   104.   The following day, Plaintiff reported these incidents to Human Resources, and

5   explained that he could not return to work in such a hostile environment.

6   105.   Upon information and belief, Plaintiff was informed in an email that his position

7   was going to be terminated, but that he was welcome to reapply for the Tech 1 position that he

8   had already been denied for twice.

9   106.   Upon information and belief, because Plaintiff was suffering mental anguish not

10  only because of his wife's passing, but also because of Defendant's discriminatory behavior,

11  Plaintiff did not respond to this email.

12  107.   Despite Plaintiff working the Tech I position for nearly two years and being

13  promised the promotion, Plaintiff was denied the promotion because of his race.

14  108.   Plaintiff has been recognized for his superior work performance on several

15  occasions.

16  109.   Upon information and belief, Plaintiff was the only African American working

17  on the Tech 1 line.

18  110.   Upon information and belief, other African American employees who were not

19  on the Tech 1 line were also harassed due to race.

20  111.   Upon information and belief, other African American employees were also

21  subjected to harassment based on their race, including being constantly watched by

22  management, being denied vacation or FMLA leave, and being disciplined more harshly.

23  **FIRST CAUSE OF ACTION**

24  **(Discrimination Based on Race and Sex in violation of State and Federal Statutes)**

25  112.   Plaintiff incorporates all of the allegations in the preceding paragraphs as though

26  fully set forth herein.

27  113.   Plaintiff is a member of the class of persons protected by state and federal

28  statutes prohibiting discrimination based on race, disability, or a combination of both.

114.     Defendant as an employer is subject to Nevada and federal statutes prohibiting discrimination, NRS 613.330 et. seq., Title VII, 42 U.S.C. § 2000e et. seq. as amended and thus, has a legal obligation to provide Plaintiff with a work environment free from discrimination and harassment.

115.     Defendant refused to take reasonably adequate steps to prevent discrimination against Plaintiff by knowingly allowing employees to harass Plaintiff because of his race, by failing to address Plaintiff's complaints of racial discrimination.

116.     Plaintiff endured a series of discriminatory acts carried out by Defendant, the chief example being that Plaintiff was denied a promotion because he was Black.

117.     Plaintiff reported this discriminatory act, as well as countless others, but Defendant never addressed the complaints.

118.     No other similarly situated persons, not of Plaintiff's protected class were subject to the same or substantially similar conduct.

119.     Plaintiff suffered adverse economic impact due to Defendant's discriminatory behavior and termination.

120.     Plaintiff was embarrassed, humiliated, angered and discouraged by the discriminatory actions taken against her.

121.     Plaintiff suffered compensable emotional and physical harm, including but not limited to, headaches, sleeplessness, anxiety and depression resulting from this unlawful discrimination by his employer.

122.     Plaintiff is entitled to be fully compensated for his emotional disturbance by being forced to endure this discrimination.

123.     Pursuant to 1991 Amendments to Title VII, Plaintiff is entitled to recover punitive damages for Defendant's intentional repeated violations of federal and state civil rights laws.

124.     Plaintiff suffered damages in an amount deemed sufficient by the jury.

125.     Plaintiff is entitled to an award of reasonable attorney's fees.

126.     Defendant is guilty of oppression, fraud or malice, express or implied as

1   Defendant knowingly and intentionally discriminated against Plaintiff because of his race and

2   disability.

3      127. Therefore, Plaintiff is entitled to recover damages for the sake of example, to

4   deter other employers from engaging in such conduct and by way of punishing the Defendant

5   in an amount deemed sufficient by the jury.

6   **SECOND CAUSE OF ACTION**

7   **(Retaliation under Federal Law, 42 U.S.C. § 2000e-3 and State Law, NRS 613.340)**

8      128. Plaintiff incorporates all of the allegations in the preceding paragraphs as though

9   fully set forth herein.

10      129. In violation of 42 U.S.C § 200e-3, Defendant retaliated against Plaintiff after he

11   complained of acts which he reasonably believed were discriminatory.

12      130. In violation of NRS 613.340 Defendant retaliated against Plaintiff after he

13   complained of acts, which he reasonably believed were discriminatory.

14      131. Plaintiff complained of sexual harassment, age and race discrimination, as well

15   as retaliation to management and to the Company's Human Resources Department, but Plaintiff

16   was only met with more retaliation after making such complaints.

17      132. There may be more detrimental acts of which Plaintiff is unaware which may

18   also constitute retaliation in that it harmed Plaintiff.

19      133. The actions and conduct by Defendant constitute illegal retaliation which is

20   prohibited by federal and state statutes.

21      134. Plaintiff suffered damages in an amount deemed sufficient by the jury.

22      135. Plaintiff is entitled to an award of reasonable attorney's fees.

23      136. Defendant is guilty of oppression, fraud or malice, express or implied because

24   Defendant knowingly and intentionally retaliated against Plaintiff because he submitted a

25   complaint of racial discrimination with the general manager.

26      137. Therefore, Plaintiff is entitled to recover damages for the sake of example, to

27   deter other employers from engaging in such conduct and by way of punishing the Defendant

28   in an amount deemed sufficient by the jury.

**THIRD CAUSE OF ACTION**

**(Discrimination in Violation of the ADEA, 29 U.S.C. §631 et. seq.)**

138.    Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

139.    Defendant violated 29 U.S.C. § 631 et. seq., by discriminating against Plaintiff because of Plaintiff's age.

140.    Defendant engaged in age discrimination in violation of 29 U.S.C. § 631 when Defendant failed to promote Plaintiff because of his age.

141.    Plaintiff was over the age of 40 at the time he applied for the Tech I promotion.

142.    Plaintiff learned that he was not promoted because he was too old.

143.    After failing to promote Plaintiff because of his age, Defendant continue to retaliate against Plaintiff on the basis of age by constantly harassing him.

144.    Plaintiff was constantly told he was slow, and then constantly forced to perform timed tasks for the sole purpose of harassing Plaintiff.

145.    Plaintiff may be unaware of additional detrimental acts constituting discrimination and retaliation in that it harmed him in the workplace.

146.    Due to its illegal actions, Defendant must pay damages in an amount to be determined at trial for back pay, front pay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

147.    Because Defendant is guilty of oppression, fraud or malice, express or implied, Defendant must pay Plaintiff an additional amount for the sake of example and by way of punishment.

148.    Plaintiff has had to obtain the services of an attorney to protect his rights and secure compensation for the damages incurred when Defendant violated Plaintiff's civil rights, and therefore, he is entitled to recover reasonable attorney's fees against Defendant.

**FOURTH CAUSE OF ACTION**

**(Retaliation in Violation of the ADEA, 29 U.S.C. §631 et. seq.)**

149.    Plaintiff incorporates all the allegations in the preceding paragraphs as though

fully set forth herein.

150.    Defendant violated 29 U.S.C. § 631 et. seq., by retaliating against Plaintiff after he complained of acts, which he reasonably believed were discriminatory.

151.    Plaintiff reported this age discrimination to management and to the Company's Human Resources Department, but Plaintiff was only met with more discrimination and retaliation after making such complaints.

152.    Plaintiff may be unaware of additional detrimental acts constituting retaliation in that harmed him in the workplace.

153.    Due to its illegal actions, Defendant must pay damages in an amount to be determined at trial for back pay, front pay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

154.    Because Defendant is guilty of oppression, fraud or malice, express or implied, Defendant must pay Plaintiff an additional amount for the sake of example and by way of punishment.

155.    Plaintiff has had to obtain the services of an attorney to protect his rights and secure compensation for the damages incurred when Defendant violated Plaintiff's civil rights, and therefore, he is entitled to recover reasonable attorney's fees against Defendant.

**FIFTH CAUSE OF ACTION**

**(Violation of the Civil Rights Act of 1871, §1981)**

156.    Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

157.    Plaintiff is African American and therefore a member of a protected class.

158.    Defendant engaged in the above-mentioned harassment and discrimination of Plaintiff with the purposeful intent to discriminate against his because of his race (African American).

159.    Under similar circumstances, other, white or non-African American employees were not subjected to a racially hostile working environment.

160.    Plaintiff was subject to disparate treatment and retaliation through adverse

employment actions, and favorable behavior toward white employees, which is prima facie evidence of purposeful intent to discriminate against Plaintiff because of his race.

161.   Plaintiff suffered damages in an amount deemed sufficient by the jury.

162.   Plaintiff is entitled to an award of reasonable attorney's fees in this matter.

163.   Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly violated Plaintiff's rights under Section 1981 of the Civil Rights Act of 1871.

164.   Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## SIXTH CAUSE OF ACTION

### (Intentional/Negligent Infliction of Emotional Distress)

165.   Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

166.   Defendant's conduct toward Plaintiff was extreme, outrageous, and caused significant emotional harm, headaches, sleeplessness and various physical and mental distress.

167.   Defendant's conduct was extreme, outrageous, and undertaken with either intent or, reckless disregard for causing Plaintiff emotional distress.

168.   Plaintiff's physician required that he take short-term disability because of the mental distress that Plaintiff was suffering due to the hostile environment.

169.   Defendant had a duty to refrain from engaging in the hostile and retaliatory acts as described above.

170.   Defendant breached that duty.

171.   Defendant's intentional or negligent conduct was the legal, actual, proximate cause of Plaintiff's extreme and/or severe emotional distress by engaging in the conduct described herein.

172.   Defendant must pay damages in an amount to be determined at trial but exceeding $25,000 for emotional pain, suffering, inconvenience, mental anguish and loss of

1    enjoyment of life because they engaged in illegal actions.

2         173.    Because Defendant is guilty of oppression, fraud or malice, express or implied,

3    Defendant must pay Plaintiff an additional amount for the sake of example and by way of

4    punishment.

5         174.    Plaintiff has had to obtain the services of an attorney to protect his rights and

6    secure compensation for the damages incurred as a result of these violations and therefore, he

7    is entitled to recover reasonable attorney's fees against Defendant.

8         **WHEREFORE,** Plaintiff prays this court for:

9         a.    A jury trial on all appropriate claims;

10   moreover, to enter judgment in favor of the Plaintiff by:

11        b.    Awarding Plaintiff an amount sufficient to fully compensate his (including tax

12             consequences) for all economic losses of any kind, and otherwise make his

13             whole in accordance with Title VII, the Age Discrimination in Employment

14             Act, the Civil Rights Act of 1871, §1981, and certain claims brought pursuant

15             to the Nevada Revised Statutes;

16        c.    General damages;

17        d.    Special damages;

18        e.    An award of compensatory and punitive damages to be determined at trial;

19        f.    Pre- and post-judgment interest;

20        g.    An award of attorney's fees and costs; and

21        h.    Any other relief the court deems just and proper.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1        Dated this 4th Day of December, 2020.

2                             **HKM EMPLOYMENT ATTORNEYS, LLP**

3

4                             */s/ Jenny L. Foley*
                              **JENNY L. FOLEY, Ph.D., Esq.**

5                             Nevada Bar No. 9017

6                             1785 East Sahara, Suite 300
                            Las Vegas, Nevada 89104

7                             Tel: (702) 805-8340
                            Fax: (702) 805-8340

8                             E-mail: jfoley@hkm.com
                            *Attorney for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28